UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER EDDINGS,

Plaintiff,

v.

HEIDI WASHINGTON et al.,

Defendants.

Case No. 1:26-cv-961

Honorable Ray Kent

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court previously granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.”).[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility and at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. Plaintiff sues MDOC Director Heidi Washington, MCF Warden James Schiebner, SRF Warden A. Douglas, MDOC Office of Legal Affairs Richard Russell, Registered Nurses S. Smoyer, Patricia Lamb, and Mary Anderson, Vital

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), “context matters” and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of “parties” and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of “the term ‘parties’ solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of ‘parties’ in other contexts”).

Core Health Strategies CEOs Viola Riggins and Chris Gurko, MCF Housing Unit Manager Mike Wilkinson, Doctors Unknown Eck and Unknown Le, and Nurse Practitioners M. Bray, S. Keys, and K. Kuerth. All Defendants are sued in their respective personal capacities. (Am. Compl., ECF No. 6, PageID.32–35.)

The events described in Plaintiff's complaint span from January 2019 to March 2026. Plaintiff alleges that, in January 2019, while Plaintiff was first housed at MCF, Plaintiff began experiencing "overwhelming abdominal pain." (*Id.*, PageID.33.) "Health Care Staff" determined that Plaintiff was suffering from acid reflux. (*Id.*) Plaintiff "was repeatedly prescribed the wrong medications to eradicate the pain." (*Id.*) "Medical staff at MCF" also referred Plaintiff to mental health services because they believed that Plaintiff's complaints were attributed to mental health condition, which they labeled as a psychosis. (*Id.*) Medical staff did not obtain a blood test or stool sample. (*Id.*) Plaintiff was then transferred to another MDOC facility. (*Id.*)

In June 2022, Plaintiff was transferred to SRF. (*Id.*) While at SRF, Plaintiff submitted multiple kites concerning his chest and abdominal pain, but "health care staff" did not determine the cause of Plaintiff's ailments. (*Id.*)

On November 8, 2023, a non-party off-site medical care provider recommended testing for Plaintiff's constipation, chest pain, and abdominal pain. (*Id.*, PageID.36.) The test revealed that Plaintiff had a bacterial infection known as H. Pylori. (*Id.*) On November 30, 2023, the non-party off-site medical care provider prescribed Plaintiff with antibiotics for 14 days. (*Id.*)

On December 2, 2023, Plaintiff filed a grievance concerning his medical treatment. (*Id.*, PageID.43.) Defendant Douglas responded to Plaintiff's grievance but "refuse[d] to conduct a thorough investigation into this incident" or request that health care conduct further testing into the causes of Plaintiff's symptoms. (*Id.*)

Plaintiff later began having similar symptoms and, on February 5, 2024, was seen by "nursing," who again referred Plaintiff to the non-party off-site medical care provider. (*Id.*, PageID.36.) On March 8, 2024, the non-party off-site medical care provider saw Plaintiff and ordered additional testing. (*Id.*) Plaintiff's test results were negative for H. Pylori "once again." (*Id.*) The non-party off-site medical care provider prescribed Protonix "again." (*Id.*) Plaintiff's symptoms continued. (*Id.*) Plaintiff was scheduled for another visit with the non-party off-site medical care provider but was transferred to MCF in June 2024. (*Id.*, PageID.37.)

On September 11, 2024, and September 13, 2024, Plaintiff submitted kites to MCF "health care" concerning his worsening symptoms and previously scheduled follow-up appointment. (*Id.*) On October 9, 2024, Plaintiff had a follow-up appointment, at which time the Plaintiff's prescription for Protonix was discontinued. (*Id.*)

On December 10, 2024, and December 12, 2024, Plaintiff submitted medical kites regarding his worsening chest and abdominal pain. (*Id.*) Plaintiff was seen by Defendant Bray on December 20, 2024. (*Id.*) When Plaintiff asked why Defendant Bray was not requesting "certain testing," Defendant Bray told Plaintiff, "It's the people that's' over me refusing the request to conduct a colonoscopy, endoscopy and biopsy." (*Id.*) Defendant Bray told Plaintiff that Vital Core Health Strategies was directing her but that she also had "had no concerns" requiring an alternative plan of treatment and that Protonix was not the correct medication to treat Plaintiff's chest and abdominal pain. (*Id.*, PageID.37–38.)

Plaintiff subsequently sent a kite to Defendant Schiebner, informing Defendant Schiebner that Plaintiff was having an "issue obtaining proper medical treatment." (*Id.*, PageID.42.) Defendant Schiebner received the kite on February 26, 2025; however, Plaintiff never received a response. (*Id.*)

In early July 2025, Plaintiff saw Defendant Eck, who suggested a dietary supplement meal and prescribed sulfasalazine. (*Id.*, PageID.38.) Defendant Eck denied Plaintiff's request for a colonoscopy, endoscopy, or biopsy "per Vital Core Health Strategies." (*Id.*)

On December 9, 2025, Plaintiff had an appointment with Defendant Le. (*Id.*) During that appointment, Plaintiff asked Defendant Le to put in a request for a colonoscopy, endoscopy, or biopsy, and she responded that she would. (*Id.*) Defendant Le "discontinued the prescribed medication without an alternative plan in place." (*Id.*) No follow-up appointment was scheduled. (*Id.*)

On March 5, 2026, Defendant Wilkinson indicated in an administrative report that Plaintiff "does have so [sic] kind of medical condition but he is still responsible to pay the $5.00 copay." (*Id.*, PageID.39.) Defendant Wilkinson blamed Vital Core Health Strategies for denying Plaintiff a colonoscopy, endoscopy, or biopsy and gave Plaintiff the names of Defendants Riggins and Gurko (*Id.*)

Plaintiff also claims that he filed grievances, which were improperly responded to and/or denied by Defendants Wilkinson, Lamb, Smoyer, and Russell. (*Id.*, PageID.39–42.) Plaintiff further alleges that Defendant Washington failed "to ensure policy and laws are being upheld by her staff within the Department of Corrections." (*Id.*, PageID.43.)

Based on the foregoing allegations, Plaintiff seeks monetary relief. (*Id.*, PageID.45.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. Discussion

### A. Allegations Against "Health Care" and "Staff"

Plaintiff makes several allegations against "health care," "staff," and nursing." These factual allegations, even if construed against Defendants as a group, are insufficient to implicate any named Defendant. "Summary reference to a single, five-headed 'Defendants' [or officers or

staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Thus, Plaintiff's claims against "health care," "staff," "nursing," and Defendants as a group fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and will be dismissed. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

**B. Claims Against Defendants Anderson, Keys, and Kuerth**

Plaintiff lists Defendants Anderson, Keys, and Kuerth in his list of parties but does not make any factual allegations against these Defendants within the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a

basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.”).

Accordingly, the Court will dismiss Plaintiff’s amended complaint against Defendants Anderson, Keys, and Kuerth.

### C. Claims Against Defendants Washington, Wilkinson, Lamb, Smoyer, and Russell

Plaintiff alleges that Defendant Washington failed to ensure that Plaintiff was receiving proper medical treatment. Plaintiff also claims that Defendants Douglas, Wilkinson, Lamb, Smoyer, and Russell improperly responded to or denied Plaintiff’s grievances. However, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep’t of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one’s subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). “[A] plaintiff must plead that each Government-official defendant, through the official’s own individual actions, has violated the Constitution.” *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> “[A] supervisory official’s failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific

> incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to provide the court with any well-pleaded factual allegations that would suggest that Defendants Washington, Wilkinson, Lamb, Smoyer, and Russell authorized, approved, or knowingly acquiesced in any unconstitutional conduct. Accordingly, the Court will dismiss Plaintiff's complaint against Defendants Washington, Wilkinson, Lamb, Smoyer, and Russell for failure to state a claim.

### D. Eighth Amendment Medical Care Claims

Plaintiff alleges that Defendants failed to provide him with adequate medical care. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is

obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty*., 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643

F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

**1. Objective Component**

Plaintiff claims that he suffered from abdominal and chest pain and constipation, which medical staff diagnosed as acid reflux.[2] Various courts have observed that "GERD—also known as acid reflux—is a common problem and in many instances is not a serious condition warranting [constitutional] scrutiny." *Tennyson v. Raemisch*, 638 F. App'x 685, 689 (10th Cir. 2015); *Williamson v. Bolton*, No. 3:18-CV-529-CHB, 2019 WL 96306, at *5 (W.D. Ky. Jan. 3, 2019) ("Plaintiff's vague allegation that he was in pain due to acid [reflux] is not sufficient to establish a serious medical need to meet the objective standard of a deliberate indifference claim."); *Watson-El v. Wilson*, No. 08 C 7036, 2010 WL 3732127, at *13 (N.D. Ill. Sept. 15, 2010) ("The court finds as a matter of law that the plaintiff's acid [reflux] did not rise to the level of a serious medical need for purposes of Eighth Amendment analysis."); *Fox v. Rodgers*, No. 08-CV-14727, 2010 WL 2605940, at *3 (E.D. Mich. June 8, 2010), *report and recommendation adopted,* No. 08-CV-14727, 2010 WL 2605832 (E.D. Mich. June 25, 2010). ("Plaintiff falls short of satisfying the objective component).

---

[2] In November 2023, Plaintiff was diagnosed with and treated for H. Pylori by a non-party outside medical care provider; however, Plaintiff's subsequent test results for H. Pylori were negative. (Am. Compl., ECF No. 6, PageID.36.) Plaintiff has not presented the Court with any facts that would suggest that Plaintiff ever suffered from untreated H. Pylori. Plaintiff also claims that "medical staff at MCF" attributed Plaintiff's complaints to "a disorder, which they labeled as psychosis." (*Id.*, PageID.33.) However, Plaintiff does not appear to dispute the adequacy of his mental health treatment.

Here, Plaintiff has not presented the Court with any facts would suggest that Plaintiff's symptoms rose to the level of an objectively serious medical condition posing a substantial risk of serious harm as required to state an Eighth Amendment claim. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim based upon Plaintiff's failure to plead sufficient facts to satisfy the objective component.

**2. Subjective Component**

However, even if Plaintiff had satisfied the objective component, that does not end the Court's inquiry. The Court must consider whether the individual Defendants were subjectively aware of a substantial risk of serious harm and were nonetheless deliberately indifferent to that risk of harm in their treatment of Plaintiff.

Plaintiff first alleges that, on December 2, 2023, he informed Defendant Douglas through a grievance that he was not receiving adequate medical care and that Defendant Douglas "refuse[d] to conduct a thorough investigation into this incident" or request that health care conduct further testing into the causes of Plaintiff's symptoms. (Am. Compl., ECF No. 6, PageID.43.) However, Plaintiff has presented no facts that would suggest that Defendant Douglas was aware that Plaintiff's complaint presented a substantial risk of serious harm or that Plaintiff's treatment—here, presumably the November 2023 treatment by the outside medical care provider—was woefully inadequate.

Even under the higher Fourteenth Amendment due process standard, the Sixth Circuit has explained that, absent obvious constitutional violations, non-medical defendants

> lack medical expertise. So they typically act reasonably by referring an inmate's health concerns to medical personnel. *See Mercer v. Athens County*, 72 F.4th 152, 162–63 (6th Cir. 2023); *Shaver v. Brimfield Township*, 628 F. App'x 378, 383 (6th Cir. 2015); *Smith v. County of Lenawee*, 505 F. App'x 526, 533–34 (6th Cir. 2012). Likewise, once inmates begin to receive care from a medical professional, officers typically act reasonably by following the "medical professional's diagnosis or treatment." *Grote* [*v. Kenton Cnty., Kentucky*, 85 F.4th 397, 412 (6th Cir. 2023)];

> *see McGaw v. Sevier County*, 715 F. App'x 495, 497–99 (6th Cir. 2017); *see also Graham v. County of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004). A contrary rule would adopt the (potentially dangerous) proposition that lay staff have a duty to veto medical decisions from trained professionals. *See McGaw*, 715 F. App'x at 498.

*Hehrer v. Cnty. of Clinton, Michigan*, 161 F.4th 955, 964 (6th Cir. 2025).

In this case, Plaintiff has not provided any facts that would plausibly suggest any obvious issue with allowing the non-party off-site medical care provider to treat Plaintiff for H. Pylori. Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Douglas.

Plaintiff alleges that Defendants Eck, Le, and Bray each examined Plaintiff but did provide Plaintiff with appropriate medical care. Plaintiff claims that he was seen by Defendant Bray on December 20, 2024, after Plaintiff's prescription for Protonix was discontinued on October 9, 2024. (Am. Compl., ECF No. 6, PageID.37.) At that time, Defendant Bray told Plaintiff that she had "had no concerns" requiring an alternative plan of treatment, and that Protonix was not the correct medication to treat Plaintiff's chest and abdominal pain. (*Id.*, PageID.37–38.) While Plaintiff may disagree with this course of treatment, these facts do not suggest that Defendant Bray was deliberately indifferent in her treatment of Plaintiff.

Plaintiff claims that he then sent a kite to Defendant Schiebner, informing Defendant Schiebner that he was having an "issue obtaining proper medical treatment," but that Defendant Schiebner did not respond. (*Id.*, PageID.42.) However, Plaintiff has not provided any facts to suggest that Defendant Schiebner was directly involved in Plaintiff's medical treatment. For the same reasons discussed above with respect to Defendant Douglas, Plaintiff fails to state an Eighth Amendment claim against Defendant Schiebner.

Plaintiff alleges that Defendant Eck suggested a dietary supplement meal and prescribed sulfasalazine, (Am. Compl., ECF No. 6, PageID.38), "a potent disease-modifying antirheumatic drug (DMARD), helps manage autoimmune conditions like rheumatoid arthritis and inflammatory

bowel disease." "Sulfasalazine," National Library of Medicine, https://www.ncbi.nlm.nih.gov/sites/books/NBK557809/ (last visited Sep. 30, 2026), and that Defendant Le discontinued Plaintiff's prescribed medication but did not put an alternative plan in place, (Am. Compl., ECF No. 6, PageID.38). While Plaintiff may disagree with the diagnosis and treatment of these treating professionals, Plaintiff's disagreement alone does not demonstrate deliberate indifference. There are no facts within Plaintiff's amended complaint that would indicate that Defendants Eck and Le were aware that their treatment decisions posed a substantial risk of serious harm. At best, Plaintiff's allegations may suggest negligence, which cannot give rise to an Eighth Amendment claim. *See Estelle*, 429 U.S. at 105.

Finally, Plaintiff faults Defendants Riggins and Gurko for not authorizing a colonoscopy, endoscopy, or biopsy at Plaintiff's request. However, there are no facts to plausibly suggest that these tests were medically indicated, let alone that Defendants Riggins and Gurko were aware that the tests were necessary to prevent a substantial risk of serious harm but that they nonetheless refused. Therefore, Plaintiff has not stated an Eighth Amendment claim against Defendants Riggins and Gurko and Plaintiff's claims against them will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's amended complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the

full appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the full appellate filing fee in one lump sum.

A judgment consistent with this opinion will be entered.

Dated: October 20, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge